FILED

2012 Sep-24  PM 12:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DENNIS JAMES HUDSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-CV-02851-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Dennis James Hudson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of the Social Security Administration denying his applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the final decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed his claim for disability, DIB, and SSI on July 11, 2006, alleging onset of disability as of September 1, 2005. (Tr. 196, 201). The Social Security Administration issued a durational denial on September 7, 2006 finding that Plaintiff was currently unable to work but would improve within twelve months. (Tr. 140, 148). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Robert Faircloth on March 6, 2008. (Tr. 37, 147). In his decision dated April 12, 2008, the ALJ determined that Hudson had not been disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act"). (Tr. 135). The ALJ determined that the medical evidence established severe impairments of chronic neck and shoulder

pain, status post lumbar surgeries, which precluded past work but allowed for light work lifting and carrying twenty pounds occasionally, an option to sit or stand throughout the day, and occasional use of arms and hands for lifting up to 15 pounds. (Tr. 130, 133, 135). This decision was appealed on April 29, 2008 (Tr. 161) and the Appeals Council remanded on October 24, 2008. (Tr. 136).

Another hearing was held before a different ALJ on March 1, 2010. (Tr. 38). The new ALJ issued a decision on April 21, 2010 (Tr. 10) finding severe impairments of hypertension, migraines, degenerative disk disease, degenerative joint disease, and left ulnar neuropathy. (Tr. 16). The ALJ found these impairments precluded past work (Tr. 20) but allowed for sedentary work with occasional use of hands. (Tr. 17 - 21). The ALJ determined that Plaintiff was capable of performing jobs that exist in substantial numbers in the national economy and therefore was not disabled. (Tr. 21-22).

Review of the second ALJ decision was requested on May 11, 2010. (Tr. 9). After the Appeals Council denied the request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff was forty-two years old at the time of the first ALJ decision in April 2008 and has past relevant work as a driver, auto puller, courier, and laborer. (Tr. 133-34). Plaintiff underwent shoulder surgery for shoulder and spine issues in both September 2000 and August 2005. (Tr. 534, 566). In September 2005 Plaintiff's physician, Dr. Riley, noted only minimal discomfort and that the patient was doing well. (Tr. 405). Plaintiff continued to do well until February 2006 when he began experiencing neck and radiating left arm pain. (Tr. 458). He was diagnosed with a cervical herniated disc and cervical radiculopathy. (Tr. 459).

2

On April 12, 2006 Plaintiff underwent anterior cervical diskectomy and fusion at the C5-6 level. Dr. Berchuk's notes from after the surgery reveal consistently well healed incisions and grafts along with intact upper extremity strength. (Tr. 448-54, 493). In September 2006, Plaintiff was referred to Dr. Eudy. (Tr. 528). Dr. Eudy performed a full musculoskeletal examination and found a decreased range of motion in the shoulders bilaterally but no synovitis, joint swelling, tenderness, warmth, or effusions. (Tr. 528-29). Dr. Eudy's impressions from this visit included intermittent arthralgias, myalgias, intermittent neurolalgic pain with burning in the left thigh, and some neuropathic pain in the left arm and elbow region. (Tr. 529).

Dr. Jennings treated Plaintiff between March 2007 and August 2008. (Tr. 625-55). Examinations from the first two of these visits revealed 5/5 muscle strength and 3/5 deep tendon reflexes in both the upper and lower extremities. (Tr. 652, 655). At the first meeting, Dr. Jennings noted a decreased range of motion in the shoulders; however, at the second visit, Dr. Jennings noted that Plaintiff possessed a full range of motion in both shoulders. (Tr. 652, 655). Plaintiff's examinations remained mostly consistent with these findings through May 2008. (Tr. 631, 636-37, 642, 644-45, 648, 651).

Dr. Jennings records contain the following note from March 20, 2007:

> "We have told the patient that we were not willing to prescribe any narcotics; however, we are willing to work with the patient on other methods to try to control his pain and to get him rehabilitated so that he is able to rejoin the work force. I have told the patient that I do not believe that he will be approved for disability for this condition seeing that he is so healthy otherwise."

(Tr. 655). Further, on April 24, 2007, Dr. Jennings noted the following:

> "The patient has asked for a prescription of Tylox today. The patient also seems to be very concerned about getting the disability approved.

3

> As I discussed with the patient in the last visit, I do not think that this patient's medical issue warrants disability. The patient has presented a form to me today for the continuation of his current benefits related to his disability. After a physical exam, I do not feel that the patient is currently disabled and have told him that I will not fill out this form. At this point the patient became agitated and verbally abusive."

(Tr. 652).

About this time, Plaintiff's disability claim was denied for the first time. (Tr. 137, 140). The decision was remanded by the Appeals Council in October 2008 with instructions for the ALJ to obtain any updated medical records (and in particular to obtain Dr. Jennings' records), additional evidence concerning musculoskeletal impairments, to further consider Plaintiff's RFC, and supplemental evidence from a vocational expert. (Tr. 138).

Plaintiff was examined by Dr. Rothrock in May and October 2008. (Tr. 672-75). Dr. Rothrock evaluated Plaintiff's claims of headaches and found migraines without auras. (Tr. 673). A September 2008 and an October 2008 visit with Dr. Kezar's office showed Plaintiff's pain was reported at 0/10. (Tr. 666, 677). A July 2009 MRI of the spine was unremarkable at T12-L1 through L2-3, and showed a minimal disk bulge at L3-4, mild bilateral facet joint degenerative joint disease at L4-5, and was unremarkable at L5-S1. (Tr. 683). Based on these results, Dr. Ness initiated a plan which included both physical therapy and multilevel steroid injections. (Tr. 689-90). Plaintiff met with Dr. Nagi after these visits and noted good relief from the injections. (Tr. 717).

Plaintiff continued to receive treatment at UAB Highlands for neck and back pain from August to December 2009. (Tr. 717-36). During these examinations Plaintiff made claims of pain which varied in both intensity and location; however, Plaintiff was consistently found to have 5/5 strength in his upper extremities and intact sensations. (Tr. 718, 721, 725, 729, 735).

4

In January 2010, Plaintiff underwent a consultative examination with Dr. Romeo that revealed no deformities, tenderness, synovitis, effusion, clubbing, cyanosis, or edema. (Tr. 694). Dr. Romeo also noted all muscle groups and grip strength were 5/5, intact senses, 2+ reflexes, good manual dexterity, and intact gross manipulation. (Tr. 694). Dr. Romeo found the range of motion of Plaintiff's shoulders, elbows and forearms, wrists, and hands all to be normal. (Tr. 696-97). He also found Plaintiff had neck pain and low back pain without objectively identifiable etiology. (Tr. 695). Dr. Romeo determined that Plaintiff was able to sit, stand, or walk eight hours at one time without interruption or eight hours total in an 8-hour work day and that he could sort, handle, or use paper and files. (Tr. 699, 703).

In February 2010, Plaintiff underwent another consultative examination with Dr. Dewees at Plaintiff's counsel's request.  (Tr. 704, 712). Dr. Dewees assessed Plaintiff as having neck pain due to degenerative disc disease of the cervical spine, low back pain due to degenerative disc disease of the lumbar spine, left sciatica, history of rotor cuff disease on the left shoulder, migraine headaches, and hypertension. (Tr. 714). He also found that Plaintiff could lift ten pounds occasionally and could occasionally push/pull, reach, and perform fine and gross manipulation. (Tr. 707).  Nonetheless, in sharp contrast to Plaintiff's treating physician and Dr. Romeo, Dr. Dewees believed Plaintiff to be totally and permanently disabled.

## II.    ALJ's Decision

The Act's general DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. 42 U.S.C. § 423(a). The Act's SSI program is separate and distinct from the DIB. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled

to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. Patterson v. Bowen, 799 F.2d 1455, 1456 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Act which defines disability in virtually identical language for both programs. 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)     Is the person presently unemployed?

(2)     Is the person's impairment(s) severe?

(3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant can establish a prima facie case of qualifying for disability once he meets the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

Before performing the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert. *Id.* at 1239-40.

In this case, the ALJ first determined that Plaintiff has not engaged in substantial gainful employment since the onset date of disability.[1] (Tr. 15). The ALJ also determined that Plaintiff suffers from the severe impairments of hypertension, migraines, degenerative disk disease,

---

[1] Plaintiff had, however, engaged in part-time, temporary work driving cars for a car auction through a temporary service.  When the temporary service called him to work, he did so.  (Tr. 74-75).

degenerative joint disease, and left ulnar neuropathy, but that these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to the final two steps, the ALJ determined Plaintiff's RFC. The ALJ determined that Plaintiff has the RFC "to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except occasional use of hands." (Tr. 16). The ALJ acknowledged that Plaintiff's symptoms were caused by an underlying medically determinable impairment. (Tr. 18-19). However, the ALJ questioned Plaintiff's credibility concerning the intensity and limiting effects of these symptoms. (Tr. 20).

After determining the RFC, the ALJ moved on to the fourth step of the disability determination and concluded that the claimant is unable to perform past relevant work. (Tr. 20-21). In the final step of the analysis, the ALJ determined that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 21). In reaching this conclusion, the ALJ relied upon the opinion of the vocational expert who testified that jobs existed for an individual with Plaintiff's limitations. (Tr. 21-22, 61-62). The vocational expert ALJ based his conclusion on the belief that such an individual could "perform the requirements of representative occupations such as surveillance system monitor of which there are 640 such jobs in the Alabama economy and 39,000 in the national economy; and receptionist of which there are 3,000 such jobs in the Alabama economy and 15,000 in the national economy." (Tr. 21-22). Therefore, the ALJ determined that Plaintiff was not disabled.

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the ALJ's RFC findings are not based on substantial evidence. Specifically, Plaintiff contends that the ALJ committed reversible error by: (1) not complying with

8

the Appeals Council's order; (Pl.'s Mem. 12) (2) not creating an RFC that includes a restriction regarding Plaintiff's use of his arms; (Pl.'s Mem. 10) (3) not complying with SSR 96-8p; (Pl.'s Mem. 12) (4) not complying with SSR 96-9p; and (5) determining that Plaintiff is capable of working as either a receptionist or surveillance system monitor. (Pl.'s Mem. 11).

## IV.    Standard of Review

The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999).

Substantial evidence is more than a scintilla. The evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Hand v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir. 1991). The district court must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The district court will reverse a Commissioner's decision if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994). There is no presumption that the Secretary's conclusions of law are valid. *Id.*

## V.    Discussion

Plaintiff claims that the ALJ committed error in a number of ways. First, Plaintiff claims that the ALJ erred by not complying with the remand order of the Appeals Council. (Pl.'s Mem. 12). Plaintiff also contends that the ALJ erred by not creating an RFC that included a restriction on Plaintiff's use of his arms. (Pl.'s Mem. 10). Next, Plaintiff contends that the ALJ did not comply with SSRs 96-8p and 96-9p. (Pl.'s Mem. 12). Finally, Plaintiff argues that because of Plaintiff's limitations he would not be able to perform as either a receptionist or a surveillance system monitor. (Tr. 11).

### A.    The ALJ Complied with the Remand Order of the Appeals Council

Plaintiff's argument that the ALJ should have included more specific functional limitations in her analysis is based on two of the issues that the Appeals Council ordered to be resolved before it sent the case back after the first ALJ hearing. (Pl.'s Mem. 9, 10). The first of these issues is that the RFC from the original ALJ did not appropriately address the limitations in the Physical RFC Assessment from September 7, 2006. (Pl.'s Mem. 9). The second issue is an inconsistency in the testimony from the vocational expert that the ALJ relied on when determining which jobs Plaintiff could perform. (Pl.'s Mem. 9-10). Plaintiff argues that more specific functional limitation findings were needed because of these issues. However, the Appeals Council included specific orders on how

10

to resolve the two issues, and the ALJ complied with those instructions when the case was decided at the second ALJ hearing.

To correct the problems in the original RFC, the Appeals Council ordered the ALJ to:

> [g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence.

(Tr. 138). The ALJ followed these instructions when making her decision after the second hearing. The ALJ gave "further consideration to the claimant's maximum residual functional capacity" when she created a new and more restrictive RFC. (Tr. 16, 138). The ALJ also "provide[d] rationale with specific references to evidence of the record in support of the assessed limitations." (Tr. 138). The ALJ's decision thoroughly discusses Plaintiff's medical history before determining his new RFC. (Tr. 17-20). The decision references twenty-five out of the thirty medical exhibits included in the record. (Tr. 17-20). After looking at these records, the ALJ determined that while Plaintiff did have medically determinable impairments, he was not totally disabled. (Tr. 18-19). This finding was based upon substantial evidence.

The ALJ also followed the Appeals Council's instruction to "evaluate the nontreating source opinion pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (Tr. 138). These provisions explain the appropriate weight to assign to different opinions and that the opinion of a treating source deserves more weight than the opinion of a one-time examiner. 20 C.F.R. §§

11

404.1527, 416.927; SSR 96-8p, SSR 96-9p. The ALJ chose to give "little weight" to the opinions of both the disability examiners and the non-examining State agency psychiatrist. (Tr. 20). She gave "little weight" to the disability examiners because they were not medical professionals. She gave the same weight to the psychiatrist because he did not have access to all of the evidence. (Tr. 20).

The Appeals Council also ordered the ALJ to obtain additional medical records and supplemental evidence from a vocational expert in order to clarify how Plaintiff's limitations would affect the occupational base. The order included instructions to ask hypothetical questions with specific limitations and to have the vocational expert provide examples of jobs that Plaintiff could perform and their prevalence in the national economy. Finally, the Appeals Council ordered the ALJ to verify that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 138).

The ALJ obtained the referenced records and obtained the more specific information from the vocational expert. The ALJ asked the vocational expert a hypothetical question assuming an individual with Plaintiff's limitations. (Tr. 58-59). The vocational expert testified that an individual with Plaintiff's limitations could work as either a receptionist or a surveillance system monitor. (Tr. 59-60). The vocational expert listed the DOT code titles for these positions and their prevalence in both the state and national economy. (Tr. 60). The vocational expert's description of these positions is consistent with the DOT. DICOT 379.367-010, Surveillance-System Monitor, 1991 WL 673244; DICOT 237.367-038, Receptionist, 1991 WL 672192. Therefore, the ALJ's decision complies with the Appeals Council's instructions, and her findings were based upon substantial evidence.

**B.    The ALJ Did Not Err by Creating an RFC Without a Restriction in the Use of Arms**

Plaintiff next argues that he "has functional limitations in the entire upper extremity including arms and hands," and that the "ALJ's attempt to encapsulate all the limitations in 'occasional use of hands' does not adequately address the limitations of record." (Pl.'s Mem. 10).

An RFC is an assessment based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a). Making this determination is the responsibility of the ALJ and is not a medical assessment. 20 C.F.R. §§ 404.1546(c), 416.946(c), 404.1527(e), 416.927(e). In this case, the relevant evidence supports the ALJ's finding that Plaintiff only has some limitation in the use of his arms. The ALJ based his decision not only upon the medical records, but also on opinion evidence and Plaintiff's own description of his daily activities. (Tr. 16-20).

Although Plaintiff underwent shoulder surgery in September 2000 and August 2005, shortly after the 2005 procedure he reported only minimal pain in his left shoulder. (Tr. 402). In September 2005, Dr. Riley noted only minimal discomfort and that Plaintiff was doing well. (Tr. 405). In October 2005, Dr. Riley examined Plaintiff again and found improvement in all of Plaintiff's current problems, intact motor skills, and normal sensations. (Tr. 410). In December 2005, Dr. Riley found Plaintiff's left shoulder girdle and arm had no tenderness and a full range of motion without pain. (Tr. 417). In March 2006, Dr. Riley found a full range of motion without pain in both left and right shoulder girdles, arms, elbows, and forearms. (Tr. 420). Plaintiff also had normal muscle strength and tested negative for tennis elbow. (Tr. 420). These results remained consistent through two other examinations in March of 2006. (Tr. 428, 432).

The ALJ discussed Plaintiff's anterior cervical diskectomy and fusion at the C5-6 level performed by Dr. Bercheuk in April 2006. (Tr. 17). Dr. Bercheuk's notes from after the surgery until Plaintiff's visit in August 2006 reveal consistently well healed incisions and grafts along with intact upper extremity strength. (Tr. 448-54, 493). In September 2006, Plaintiff was referred to Dr. Eudy. (Tr. 528). Dr. Eudy performed a full musculoskeletal examination and found decreased range of motion in the shoulders bilaterally but no synovitis, joint swelling, tenderness, warmth, or effusions. (Tr. 528-29).

Dr. Jennings treated Plaintiff between March 2007 and August 2008. (Tr. 625-55). Examinations from the first two of these visits revealed 5/5 muscle strength and 3/5 deep tendon reflexes in both the upper and lower extremities. (Tr. 652, 655). At the first meeting, Dr. Jennings noted a decreased range of motion in the shoulders; however, at the second visit, he noted that Plaintiff possessed a full range of motion in both shoulders. (Tr. 652, 655). Plaintiff's examinations remained mostly consistent with these findings through May 2008. (Tr. 631, 636-37, 642, 644-45, 648, 651). The examination on August 8, 2008 contains no notes regarding the range of motion in Plaintiff's extremities. (Tr. 626).

Plaintiff was examined by Dr. Rothrock in May and October 2008. (Tr. 672-75). After the May visit, Dr. Rothrock noted that Plaintiff had no drift in motor testing in the upper extremities, fine motor movements were performed well with both hands, left biceps reflex was absent, right was trace present, and tricep reflexes could be elicited on both sides. (Tr. 675). The results of the October examination were similar noting that Plaintiff was "quite strong to direct testing of the deltoids, biceps, wrist extensors, and triceps bilaterally." (Tr. 673). A September 2008 examination by Dr. Pitts revealed strength in the shoulder abductors, elbow flexors, hand, and intrinsics were all 5/5

14

bilaterally. (Tr. 666). Also, at both this visit and an October 2008 visit with Dr. Kezar, Plaintiff's pain was rated at a 0/10. (Tr. 666, 677).

The ALJ also discussed treatment received by Plaintiff at UAB Highlands for neck and back pain from August to December 2009. (Tr. 18, 717-36). During these examinations Plaintiff's claims of pain varied in both intensity and location; however, Plaintiff was consistently found to have 5/5 strength in his upper extremities and intact sensations. (Tr. 718, 721, 725, 729, 735). Plaintiff underwent a consultative examination with Dr. Romeo that revealed no deformities, tenderness, synovitis, effusion, clubbing, cyanosis, or edema. (Tr. 694). Dr. Romeo also noted all muscle groups and grip strength were 5/5, intact senses, 2+ reflexes, good manual dexterity, and intact gross manipulation. (Tr. 694). Dr. Romeo found the range of motion in Plaintiff's shoulders, elbows and forearms, wrists, and hands all to be normal. (Tr. 696-97).

A review of these records shows that there is substantial evidence that Plaintiff was not—or was only minimally—limited in the use of his arms. The ALJ's RFC reflects this limitation. Therefore, the ALJ did not err in creating an RFC that does not include a restriction regarding use of arms.

**C.     The ALJ's Lack of a Function-By-Function Analysis Does Not Warrant a Remand**

Plaintiff next alleges that the ALJ erred because "[t]here were no other assessments of each area of functioning for any period consistent with the Appeals Council's orders or with the specificity requirements of SSR 96-8p calling for a function by function analysis." (Pl.'s Mem. 10). SSR 96-8p requires that an ALJ needs to "first identify the individual's functional limitations or restrictions and

assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8p.

Although the ALJ could have been more explicit in her findings, "[i]n evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Therefore, a remand is only appropriate if the lack of the function-by-function analysis resulted in an unfair evidentiary gap or clear prejudice to Plaintiff.

The Code defines sedentary work as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(A). SSR 96-8p also requires the function-by-function analysis to address the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945 regarding Plaintiff's physical abilities, mental abilities, and other abilities affected by impairment. 20 C.F.R. §§ 404.1545(b),(c),(d), 416.945(b),(c),(d).

To be able to perform sedentary work, an individual must be able to lift "no more than 10 pounds at a time" and occasionally lift or carry articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's decision is based on an analysis of substantial evidence concerning the strength in Plaintiff's arms and the non-debilitating nature of his back pain. (Tr. 17-19). For example, when Dr. Romeo examined Plaintiff in January 2010, he determined that Plaintiff was capable of frequently lifting or carrying between 21 to 50 pounds and continuously

lifting or carrying between 11 to 20 pounds. (Tr. 698). Furthermore, when questioning the vocational expert, the ALJ included a limitation on Plaintiff's ability to lift. She asked the vocational expert to only consider positions for an individual who can occasionally lift five to ten pounds. (Tr. 59). The expert determined that an individual could still work as a surveillance system monitor or receptionist with this limitation. (Tr. 59-60). Concerning the need to occasionally lift or carry "articles like docket files, ledgers, and small tools," Dr. Romeo's evaluation, together with Dr. Rothrock's finding that Plaintiff performed fine motor movements well with both hands, constitute substantial evidence supporting the conclusion that Plaintiff could perform these tasks.  (Tr. 675). 20 C.F.R. §§ 404.1567(a), 416.967(a).

There is also substantial evidence in the record that Plaintiff is capable of performing a job that requires "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a). SSR 96-9p states that "[s]itting would generally total about 6 hours of an 8-hour workday." Plaintiff claimed he was only able to walk five to ten minutes before he has to sit. (Tr. 16). Even if the ALJ had chosen to accept this reported limitation as entirely true, that limitation would not prevent Plaintiff from performing a job that requires only a "certain amount" of walking and standing and which  is a position "which involves sitting." 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ also asked the vocational expert to consider an individual who can only walk or stand five to ten minutes every hour. (Tr. 59). The VE found this limitation would not preclude work as either a surveillance system monitor or as a receptionist. (Tr. 59-60).

SSR 96-8p also requires consideration of the claimant's physical abilities, mental abilities, and other abilities affected by impairment when performing the function-by-function analysis. SSR

17

96-8p; 20 C.F.R §§ 404.1545(b),(c),(d), 416.945(b),(c),(d). The ALJ thoroughly analyzed Plaintiff's extensive medical history and how it related to his physical abilities in her decision. (Tr. 16-20).

Concerning Plaintiff's mental abilities, a psychiatric review found that Plaintiff suffered from anxiety and depression. (Tr. 621). The ALJ assigned little weight to this opinion created by a non-examining State agency psychiatrist. (Tr. 20). However, even if the ALJ had given more weight to this opinion, the psychiatrist found only mild limitations in some of Plaintiff's social abilities. (Tr. 619). The psychiatrist ultimately determined that the record showed no evidence of anything other than "non-severe" functional limitations. (Tr. 621).

Finally, the regulations require an assessment of any other abilities affected by Plaintiff's impairments. SSR 96-8p, 20 C.F.R §§ 404.1545(b),(c),(d), 416.945(b),(c),(d). The Code's examples of these types of impairments include "skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. §§ 404.1545(d), 416.945(d). Two different RFC assessments analyzed these types of limitations. (Tr. 521-23, 603-05). The first assessment included only the postural limits of avoiding ladders, ropes, scaffolds, heights and machinery. (Tr. 521-23). No limits were found concerning visual or communicative limitations. (Tr. 522-23). The second assessment had no postural, visual, communicative, or environmental limitations. (Tr. 603-05).

Based on substantial evidence in the record, Plaintiff would pass a function-by-function analysis to perform sedentary work with the restriction of "occasional use of hands." (Tr. 16). Therefore, the lack of a function-by-function analysis did not create an unfair evidentiary gap or prejudice Plaintiff.

18

**D.      The ALJ Did Not Violate SSR 96-9p**

Plaintiff argues that the ALJ failed to comply with SSR 96-9p. (Pl.'s Mem. 10). Plaintiff notes that SSR 96-9p classifies an RFC for less than a full range of sedentary work as reflecting very serious limitations and is expected to be relatively rare. (Pl.'s Mem. 10). Plaintiff also points out that the impact of such an RFC is especially critical for individuals who are under the age of fifty, since a finding of disability would follow at that age even with an RFC for the full range of sedentary work in the absence of transferable skills. (Pl.'s Mem. 10). Finally, Plaintiff notes that an inability to lift or carry more than 1 or 2 pounds would erode the unskilled sedentary occupation base significantly and that most unskilled sedentary jobs require bilateral manual dexterity. (Pl.'s Mem. 10-11).

However, an RFC for less than a full range of sedentary work does not automatically lead to a finding of disability. The ALJ still has the discretion to "make an individualized determination considering age, education, and work experience." SSR 96-9p.  There may be jobs  "an individual may still be able to perform even with a sedentary occupational base that has been eroded." SSR 96-9p. In this case, before making her decision, the ALJ consulted with a vocational expert concerning jobs that Plaintiff could still perform with his particular limitations and the prevalence of these jobs in both the state and national economy. The vocational expert identified two such jobs.

Plaintiff also argues that SSR 96-9p was violated when the ALJ did not perform a function-by-function analysis. (Pl.'s Mem. 11). However, for the reasons already discussed, the lack of a function-by-function analysis did not create an evidentiary gap or prejudice Plaintiff because Plaintiff's limitations were appropriately considered.  Therefore, the ALJ did not err by violating the guidelines set forth in SSR 96-9p.

### E.       The ALJ Did Not Pose an Incomplete Hypothetical to the Vocational Expert

Finally, Plaintiff argues that the ALJ erred by determining that Plaintiff is capable of working as either a receptionist or a surveillance monitor. (Pl.'s Mem. 11). The ALJ based this finding on the vocational expert's positive answer to the question about "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 21).  Plaintiff appears to argue that the ALJ's failure to use the phrasing "occasional use of arms" in her question to the vocational expert renders his testimony inadequate to support the conclusion that Plaintiff is able to work in jobs found in significant numbers in the national economy..

The Appeals Council directed the ALJ to "obtain supplemental evidence from a vocational expert" with hypothetical questions which "reflect the specific capacity/limitations established by the record as a whole."  The ALJ did just this.  The ALJ's question to the vocational expert included the limitations which are supported by the record as a whole, including lifting/use of arms restrictions.  (Tr. 16, 58-59). Specifically, the ALJ asked the vocational expert to assume that Plaintiff could only lift 5-10 pounds, the restriction on the use of Plaintiff's arms which is supported by substantial medical evidence in the record.  The vocational expert identified the surveillance system monitor and receptionist positions as falling within the abilities of someone with this RFC. (Tr. 16, 58-59).

A vocational expert's testimony, including her responses to hypothetical questions that include all of the claimant's impairments, can qualify as substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  The court of appeals has clarified that all impairments must

20

be addressed in questions to a vocational expert in *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

In *Pendley*, the ALJ determined that the claimant's anxiety and depression were severe impairments that limited his ability to work. *Id.* at 1562. However, when the ALJ questioned the vocational expert he did not ask him to consider these psychological impairments. Because of this lack of a comprehensive hypothetical, the Circuit Court found that the ALJ's decision was not based on substantial evidence. The court found that it could not be sure that the vocational expert would have answered in the same manner had the ALJ instructed him to consider all of the impairments. *Id.* at 1563.

Here, in contrast, the ALJ questioned the vocational expert concerning the particularities of Plaintiff's RFC's limitation "occasional use of hands" by including the restrictions on Plaintiff's ability to lift or carry items weighing 5-10 pounds. (Tr. 58-59, 63). Therefore, the vocational expert necessarily considered this limitation when determining that Plaintiff could perform these two categories of jobs and her testimony constitutes substantial evidence.

Alternatively, even if the hypothetical posed to the vocational expert has been somewhat incomplete, any error was harmless. As the Commissioner argues, the inclusion of the "occasional use or arms" limitation would not have changed the outcome. The Dictionary of Occupational Titles (DOT) description of the surveillance-system monitor job does not require reaching, handling, fingering, or feeling. *See* DICOT 379.367-010, Surveillance-System Monitor, 1991 WL 673244. Further, the vocational expert testified that there were 640 surveillance system monitor jobs in Alabama and over 39,000 in the United States (Tr. 60). The Eleventh Circuit has held that a significant number of jobs existed where a VE identified 174 jobs in the local area, 1,600 jobs in the

state, and 80,000 jobs nationwide. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987); *see also Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (noting 200 jobs in the state of Iowa and 10,000 in national economy was a significant number). Thus, even assuming Plaintiff could only perform this one job, there are a sufficient number of these jobs in the national economy to satisfy the fifth step of the disability analysis.

## VI.    Conclusion

The court concludes that the ALJ's determination that Dennis James Hudson is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum will be entered.

**DONE** and **ORDERED** this _____24th_____ day of September, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE